UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-9176-GW(PLAx) | Date | July 30, 2015 |
|---|---|---|---|
| Title | *Tobias Partners, L.P. v. City of Los Angeles, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Debi Read | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:   Attorneys Present for Defendants:

John Gerard Burgee   Deborah J. Breithaupt
   William O. Woodland

**PROCEEDINGS:** DEFENDANT CITY OF LOS ANGELES'S MOTION TO DISMISS THE COMPLAINT [17];

DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS COMPLAINT [20]

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court GRANTS the City's Motion to Dismiss Plaintiff's state due process and conversion claims, but DENIES the City's Motion to Dismiss the FAC on its proffered grounds of mootness, res judicata, and failure to join requested parties, with the exception that the Court would preclude the relitigation of the issue of whether the RAC Appeal Board violated Plaintiff's due process rights by failing to provide an impartial hearing officer. The Court GRANTS the County's Motion to Dismiss as to all of Plaintiff's claims against it.

A Scheduling Conference is set for August 20, 2015 at 8:30 a.m. Parties will file a joint scheduling report by August 18, 2015. Telephonic appearances are allowed provided that notice is given to the clerk two business days prior to the hearing.

: 25

Initials of Preparer   JG

***Tobias Partners, L.P. v. City of Los Angeles, et al.***, Case No. CV-14-9176-GW(PLAx)
Tentative Rulings on: (1) Defendant City of Los Angeles's Motion to Dismiss, and (2) Defendant County of Los Angeles's Motion to Dismiss

Pending before the Court are two Motions to Dismiss: one filed by the City of Los Angeles (the "City") and a second filed by the County of Los Angeles (the "County"). *See generally* City's Mot. to Dismiss ("City's MTD"), Docket No. 17; County's Mot. to Dismiss ("County's MTD"), Docket No. 20. The Court initially heard oral argument on the Motions on Thursday, July 2, 2015 and indicated that it would further consider the parties' respective positions, primarily with respect to the preclusive effect of an action for writ of mandamus filed by Tobias Partners, L.P. ("Plaintiff") on November 29, 2012 in Los Angeles Superior Court ("LASC") Case No. BS140586 (the "Second Writ Proceeding"). Thereafter, the Court indicated that it would only preclude the relitigation of whether the LAHD violated Plaintiff's due process rights by failing to provide an impartial hearing. *See* Supp'l Ruling at 4, Docket No. 29. The Court also requested supplemental briefing as to four issues: (1) how REAP operates and whether REAP operated properly in this situation, especially with respect to hearings; (2) whether Plaintiff exhausted its administrative remedies given that the Second Writ Proceeding did not set aside the underlying decision to place the Property into REAP and to reduce rents by 50%; (3) whether monetary damages were available in the Second Writ Proceeding; and (4) whether and how Plaintiff challenged the County's alleged wrongful actions. *See id.* at 4-6.

## I. Issues Presented in Supplemental Briefing

### A. *How REAP Operates and Whether REAP Operated Properly Here*

The Court requested further information regarding how REAP operates generally and whether REAP operated properly in this situation, especially with respect to hearings before an apartment owner is placed into the program (and the tenants are allowed to reduce their rent payments by up to 50% and pay the remaining 50% into an escrow account) and the appeal process from that hearing. Plaintiff alleges that, at the hearing held on May 21, 2012 regarding tenant relocation benefits, Morales directed the LAHD to schedule a hearing to place the Property into REAP. *See* FAC ¶ 11. There is no indication that such a hearing was ever held;

1

rather Plaintiff states that "on June 19, 2012, the LAHD sent Plaintiff a notice that the Property had been accepted into REAP" and imposed a 50% rent reduction for all units. *See id.* ¶ 13.

According to the City, the Housing & Community Investment Department ("HCID"), formerly known as the LAHD, may refer a building and/or residential unit into REAP if three conditions are satisfied: (1) the building or unit has been cited with a code enforcement order, (2) the compliance period expired without compliance, and (3) the violations affect the health and safety of the occupants, or if the unit is subject to the Rent Stabilization Ordinance, the violation causes a deprivation of housing services or habitability violation. *See* City's Supp'l Brief, Ex. 1 at 2-3, Docket No. 30-2 (LAMC § 162.03). If the HCID decides to accept a property or unit into REAP, the landlord is served with a Notice of Acceptance of the property into REAP, which indicates the outstanding violations, the units affected by the decision, the amount of rent reduction, and the date on which the rent reduction will take effect, among other things. *See id.* at 3-4 (LAMC § 162.04). The rent reduction takes effect starting with the first rental payment due twenty days after the date of the decision, unless the landlord appeals, which triggers a stay pending the completion of the appeal process. *See id.* at 4 (LAMC § 162.04(D)(5), (9)).

When a Notice of Acceptance is appealed, REAP has two levels of appellate review: (1) a first level appeal called a General Manager's Appeal Hearing, and (2) a second level appeal before the Rent Adjustment Commission ("RAC") Appeals Board. *See id.* at 5-8 (LAMC § 162.06). The RAC Appeals Board reviews the General Manager's decision for errors of law and abuse of discretion, and its decision constitutes the final administrative decision. *See id.* Ex. 2 at 12-13, Docket No. 30-2 (RAC Regulation § 1200.11.C-D). The City appears to argue that REAP operated properly in this situation because Plaintiff exercised both levels of administrative appeals to challenge the placement of the Property into REAP. *See* City's Supp'l Brief at 6:12-15, Docket No. 30.

Plaintiff concurs that it eventually was accorded with both appellate hearings but, citing to paragraphs from its Petition in the Second Writ Proceeding, adds facts regarding the imposition of REAP – without explanation as to why such facts were omitted from previous briefing – none of which the City attempts to address on Reply. *See* Pl.'s Supp'l Brief at 9:18-11:24, Docket No. 31. For instance, Plaintiff states that the Notice of Acceptance into REAP

2

that it was served on June 19, 2012 stated that the General Manager's hearing was set for June 28, 2012 and that Plaintiff could appeal the decision to accept the Property into REAP "at the hearing." *See id.* at 9:18-10:9; *see also* Pl.'s Request for Judicial Notice ("RJN"), Ex. B at 16 of 59, Docket No. 32-2 (Notice of Acceptance listing a General Manager's Hearing date of June 28, 2012). Plaintiff apparently sent a letter to the LAHD on June 25, 2012 objecting to the Notice of Acceptance and the notice of the General Manager's hearing, but according to Plaintiff, the hearing proceeded (although it is unclear whether Plaintiff participated in that hearing). *See* Pl.'s Supp'l Brief at 10:3-5. Plaintiff adds that the LAHD originally asserted that the June 28, 2012 hearing constituted the first level appeal of the decision to accept the Property into REAP but, after Plaintiff filed an appeal on July 3, 2015, held another General Manager's hearing on July 5, 2012, again upholding the decision. *See id.* at 10:16-11:3. So much is unclear from the documentation submitted by Plaintiff. Plaintiff provides a copy of a General Manager's Hearing Decision that was issued on July 5, 2012 and indicates that the hearing was held on June 28, 2012. *See* Pl.'s RJN, Ex. B at 21 of 59, Docket No. 32-2. Thus it appears that up to this point, only one hearing was held (on June 28, 2012).

On July 13, 2012, Plaintiff filed a request for administrative review of the July 5, 2012 decision. *See* Pl.'s RJN, Ex. B at 26 of 59, Docket No. 32-2. On July 19, 2012, Plaintiff received a notice of rejection of his July 3, 2012 REAP appeal request, which indicated that the General Manager's Hearing was indeed held on June 28, 2012. *See* Pl.'s RJN, Ex. B at 25 of 59, Docket No. 32-2. Thereafter, on September 4, 2012, the RAC issued a letter indicating that it had held a hearing on August 30, 2012 regarding Plaintiff's appeal of the July 5, 2012 decision and decided to reverse that decision "based on the process used to notice and schedule the June 28, 2012 hearing." *See* Pl.'s RJN, Ex. B at 27 of 59, Docket No. 32-2. The RAC Appeals Board also directed the General Manager to schedule a new hearing based on Plaintiff's July 3, 2012 request. *See id.* That hearing was held on September 12, 2012 and is the hearing that, in the Second Writ Proceeding, was determined to have violated Plaintiff's due process rights.

### B. Whether Plaintiff Exhausted its Administrative Remedies in Light of the Decision Rendered in the Second Writ Proceeding

As the Court previously indicated, Plaintiff may not have exhausted its administrative

3

remedies such that the present action for damages is appropriate because the underlying decision to place the Property into REAP and to reduce rents by 50% was never set aside. The City contends that Plaintiff did not fully exhaust its administrative remedies because it "failed to overturn the decisions which form the basis of the harm alleged in the FAC for rent losses and short-fall on the property sale price." *See* City's Supp'l Brief at 7:8-8:23, Docket No. 30 (citing *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 651 (9th Cir. 1988) (indicating that an action for damages based on California law cannot be maintained until the administrative decision in question is overturned by a writ of mandate) and *Faz v. N. Kern State Prison*, 2011 U.S. Dist. LEXIS 111682, at *15, 2011 WL 4565918 (E.D. Cal. Sept. 28, 2011) ("Under California law, if a plaintiff wishes to attack an administrative determination he must first file a writ under California Code of Civil Procedure § 1094.5. California courts classify this writ as a condition precedent to the filing of a complaint for damages." (alterations and internal citation omitted))).

Moreover, as the City contends, if the underlying administrative decision has not been overturned, it has preclusive effect in this action. *See* City's Supp'l Brief at 8:2-9, Docket No. 30; *see also Faz*, 2011 U.S. Dist. LEXIS 111682, at *16 ("The California courts have also stated that '[u]nless a party . . . challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions.'") (quoting *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 69-70 (2000)).

Plaintiff counters that "there are no further administrative procedures or remedies that are appropriate or available at this time" because "the LAHD closed its file" when the Property was released from REAP. *See* Pl.'s Supp'l Brief at 4:26-5:8, Docket No. 31. Plaintiff also states that "[t]he LAHD does not have a procedure to reopen a closed file or to hold a hearing after a file is closed." *See id.* at 5:1-3. Plaintiff does not proffer any authority for either of these statements, and the City does not address them on Reply. Thus, although Plaintiff must exhaust available administrative remedies, it remains unclear whether administrative review is available with respect to the original decision to accept the Property into REAP. The City must address whether such administrative review is indeed available. If it is not available, then Plaintiff should be permitted to proceed with its state law claims against the City.

4

### C. *Whether Monetary Damages Were Available in the Second Writ Proceeding*

As the Court previously indicated, it appears that monetary damages may not have been available in the Second Writ Proceeding, although the City contends to the contrary. In its supplemental briefing, Plaintiff points to California Civil Procedure Code § 1094.5, which states that, in reviewing administrative decisions, "[w]here the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent," it may "enter judgment either commanding respondent to set aside the order or decision, or denying the writ." *See* Cal. Civ. P. Code § 1094(e)-(f). Plaintiff argues that this is an express limitation on the relief the court is authorized to award in a mandamus proceeding. *See* Pl.'s Supp'l Brief at 2:13-22, Docket No. 31. The City cites to California Civil Procedure Code § 1095, which states that "[i]f judgment be given for the applicant [in a writ proceeding], the applicant may recover the damages which the applicant has sustained." *See* Cal. Civ. P. Code § 1095.

Although Plaintiff argues that California Civil Procedure Code § 1095 does not apply to administrative mandamus actions, *see* Pl.'s Reply at 2:3-26, Docket No. 35, California law indicates that "section 1095, is not limited in scope to administrative mandamus under Code of Civil Procedure, section 1094.5, but is a general authority for award of damages and costs in any mandamus action," *see O'Hagan v. Bd. of Zoning Adjustment*, 38 Cal.App.3d 722, 729 (1974) (involving a plaintiff who succeeded in administrative mandamus proceedings and then amended his petition to seek damages pursuant to Cal. Civ. P. Code § 1095). As such, it appears that any damages Plaintiff sustained as a result of the LAHD's failure to provide an impartial hearing were indeed recoverable in the Second Writ Proceeding, and Plaintiff should be precluded from seeking such damages here.

### D. *Whether Plaintiff Challenged the County's Alleged Wrongful Actions*

The Court also indicated that it had concerns regarding the basis of Plaintiff's claims against the County because there was no indication that Plaintiff administratively challenged the County's actions or sought a writ of mandamus compelling the County to act differently. Even in its supplemental briefing, Plaintiff does not provide any such indication. Plaintiff responds by stating, without citation to supporting documents or authority, that the Property was assigned to

5

an Interagency Task Force, a joint venture of the City and the County, which meant that both the City and the County had to approve the removal of the Property from REAP. *See* Pl.'s Supp'l Brief at 12:25-13:12, Docket No. 31. Plaintiff then recites facts relating to its efforts to secure inspections by the Department of Public Health and states that on June 28, 2013, it brought an *ex parte* Application in the Second Writ Proceeding – to which the County was not a party – for an order to show cause regarding why the Department of Public Health had not inspected the Property. *See* Pl.'s RJN, Ex. C, Docket No. 32-3. According to Plaintiff, this Application and at least two others were denied after the Department of Public Health set inspection dates, but Plaintiff does not provide copies of such subsequent applications or of the denials. *See* Pl.'s Supp'l Brief at 14:8-18, Docket No. 31.

   The County's moving papers identify procedures in place to appeal actions or decisions made by County Environmental Health personnel. *See* County's MTD at 9:6-10:21, Docket No. 20. The County contends that Plaintiff's failure to avail itself of such processes or otherwise challenge the County's actions compels dismissal of Plaintiff's Fourteenth Amendment due process claim against the County. *See* County's Reply at 4:16-20, Docket No. 33. However, the two cases the County cites in support of its position do not indicate that there is an administrative exhaustion requirement for federal due process claims; they only indicate that no cause of action lies until the plaintiff has been deprived of process. *See id.* at 2:22-3:4 (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 [for a violation of procedural due process] is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.") and *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003) (same)). Probably a better way to frame the contention is to note that an unauthorized or intentional deprivation of property does not amount to a due process violation when there exists an available and effective post-deprivation state remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Here, Plaintiff has not shown that there is an absence of such a remedy and, hence, its federal due process claim is not viable.

## II. Conclusion

   In light of the foregoing and the Court's previous tentative rulings, the Court would GRANT the City's Motion to Dismiss Plaintiff's state due process and conversion claims, but

6

would DENY the City's Motion to Dismiss the FAC on its proffered grounds of mootness, res judicata, and failure to join required parties, with the exception that the Court would preclude the relitigation of the issue of whether the RAC Appeals Board violated Plaintiff's due process rights by failing to provide an impartial hearing officer.

As to the County, the Court would GRANT the County's Motion to Dismiss as to all of Plaintiff's claims against it.